# UNITED STATES DISTRICT COURT
## for the
### Eastern District of North Carolina

DEC 2 0 2018

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| | |
|---|---|
| United States of America<br>v.<br>Deandre Lamont Miles<br><br>*Defendant(s)* | )<br>)<br>) Case No. 5:18-mj-2133-RN<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 18, 2018__ in the county of __Granville__ in the __Eastern__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | The Defendant did knowingly and intentionally possess with the intent to distribute four-hundred (400) grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or fentanyl, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

On December 18, 2018, Deandre Lamont Miles did possess with the intent to distribute four-hundred (400) grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or fentanyl, a Schedule II controlled substance, in violation of 21 USC 841(a)(1).

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jeffrey White - HSI SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/20/18

_____
*Judge's signature*

City and state: Raleigh, North Carolina

Robert T. Numbers, II, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

AFFIDAVIT

I, Jeffrey R. White, being first duly sworn depose and say:

1. Your affiant, Jeffrey R. White is a Special Agent for the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and has been so employed since March of 2004. I am a graduate of the Federal Law Enforcement Training Center for both the federal criminal investigator course, as well as the ICE Special Agent training academy. Prior to becoming a Special Agent (SA) with HSI, I was a United States Customs Inspector at the Port of El Paso, Texas from April of 2000 to March of 2004. For that position I successfully completed courses for basic federal law enforcement, as well as United States Customs law. I am currently assigned to the Office of the Resident Agent in Charge (RAC), Raleigh, North Carolina (NC).

2. I have acquired experience in investigating cases involving aliens and nationality, narcotics trafficking, weapons and explosive devices; money laundering, intellectual property rights violations, cybercrimes, child pornography and exploitation, import/export and related criminal activities. As a HSI Special Agent, I am responsible for conducting criminal investigations into violations of Titles 8, 18, 19 and 21 of the United States Code, as well as other federal criminal titles and statutes. In furtherance of my investigations, I have filed criminal complaints and affidavits with the United States District Court and have testified in support of facts therein. In addition to my experiences as an HSI Special Agent, a Customs and Border Protection Officer and a Customs Inspector I have, on numerous occasions, conducted interviews and interrogations resulting in both probable cause findings and criminal convictions in United States District Court.

1

3. This affidavit is submitted as evidence of probable cause supporting the arrest warrant for Deandre Lamont MILES (hereinafter "MILES") for possession with the intent to distribute 400 grams or more of substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1). This affidavit does not set forth all information known to your affiant about this case and is being submitted for the purpose of providing sufficient information to establish probable cause.

4. On or about February 17, 2018, Agent DJ Epperson with the Halifax County Sheriff's Office (HCSO) Narcotics Division began receiving drug trafficking information regarding Deandre MILES also known as DD from a confidential and reliable source (CS1). CS1 stated that MILES is a major supplier of heroin and fentanyl in Halifax and Northampton Counties. CS1 also informed Agent Epperson that MILES is known to make several trips to various locations to include South Carolina, to pick up large amounts of narcotics and bring the narcotics back to the area of Warner Bridge Road, located in Northampton County, NC.

5. On February 29th, 2018 Agent Epperson received a phone call from CS1 stating that MILES had just returned from making a trip to obtain additional controlled substances. CS1 also stated during the phone call that MILES stated to CS1 to come pick up the product.

6. CS1 informed Agent Epperson that the normal routine for MILES was to call all the local dealers in the area once he returned to town and the dealers would travel to pick up the product from MILES in the area of Warner Bridge Road, Northampton County, NC. With this information, Agents were able to set up in the vicinity of Warner Bridge and conduct surveillance on MILES. While conducting surveillance, Agent C. Babb was able to follow a vehicle from the Warner Bridge area, onto Interstate Highway Ninety-Five (I-95) traveling south bound into Halifax County. Once in Halifax County Agent Babb attempted to conduct a traffic stop of the vehicle which resulted in a high-speed vehicle pursuit through the town of Roanoke Rapids, NC.

2

7. On February 30th, 2018, Agent Epperson received another phone call from CS1 who stated that during the above-mentioned vehicle pursuit, the subjects inside the vehicle threw approximately five ounces of heroin out of the window. CS1 stated the five ounces were supplied directly from MILES.

8. On October 26, 2018, Agents of the HCSO Narcotics Division executed a narcotics search warrant at the residence of 5 Victory Lane, Roanoke Rapids, NC. As a result of the search warrant, agents located approximately 393.2 grams of heroin. During a follow up interview, a cooperating defendant stated that MILES was the supplier and that he (MILES) brought the heroin that was seized directly to that residence from the area of Warner Bridge Road, Northampton County, NC.

9. On October 29, 2018, Agent Epperson received a phone call a reliable, confidential source (CS3) stating that MILES had just arrived in the area of Warner Bridge Rd. Northampton County and had brought back "three bricks" of heroin. Agent DJ Epperson then asked CS3 what was the definition of three bricks and CS3 stated three kilos of heroin. CS3 stated that MILES traveled from Raleigh, NC, driving the black Camaro and delivered the three kilos of heroin to the Warner Bridge area.

10. On November 12, 2018, HSCO Captain (Capt.) A. Harris received information from a different, reliable confidential source (CS2) stating that MILES and Deandre MOODY departed that same date and were traveling to New York, New York to pick up one pound of heroin and approximately 4,000 fentanyl pills. CS2 stated that MILES and MOODY would then bring the narcotics back to the area of Warner Bridge Road, Northampton County, NC. Agent Epperson was able to verify this information by looking at MILES' wife's Facebook page. MILES' wife, Jasmine MILES (also known as Jasmine Parker) made a public post stating that MILES had left going to New York and would be back in town tomorrow.

11. On November 13, 2018, NC State Bureau of Investigation (SBI) Special Agent (SA) Stephen Staton applied for and was granted a court order to capture call and cellular data from the telephones

associated with MILES and MOODY. Pursuant to the court order, the SBI was able to determine that the cell phone associated with MOODY was located in the vicinity of Baltimore, Maryland. Subsequent data showed that the cellular phone was traveling south on I-95.

12. The SBI was able to locate the cell towers utilized by MOODY'S cell phone and discovered that the phone had been in New York City, verifying the information that was provided to the HCSO.

13. Agent Epperson was aware of several vehicles that were registered to MILES. One of those vehicles was a black Chevrolet Camaro. Homeland Security Investigations (HSI) SA Jeff White contacted Granville County Sheriff's Office (GCSO) Deputy (Dep.) Shawn Spence and requested that he drive by 214 East Lyons St., Creedmoor, NC, an address associated with MILES to identify which vehicles were at that residence. Dep. Spence stated that he did not observe a black Camaro at the residence at that time. Agent Epperson then drove by the area of Warner Bridge Road and noticed that the Camaro was not located at that location either. At that point it was suspected that MILES and MOODY were returning from New York in the Camaro.

14. Later that Agent Epperson drove by of the area of Warner Bridge Road. Agent Epperson located the Camaro registered to MILES as well as an all-white Crown Victoria registered to MOODY parked at the top of the path of the area of Warner Bridge Road. This verified that MILES and MOODY had returned from New York and had been driving the Camaro.

15. On November 15, 2018, Agent Epperson received a phone call from CS3 who was in the area of Warner Bridge during the time that MILES was there and was selling narcotics. CS3 said that MILES had two black trash bags full of raw heroin inside of the trunk of a BMW that is registered to MILES. CS3 stated that MILES was distributing the narcotics directly from the trunk of the vehicle to several people.

16. On November 26, 2018, Agent Epperson applied for a court order to emplace and monitor a GPS tracking device on to the Camaro registered to MILES.

17. On November 30, 2018, Agent Epperson and other HCSO Agents emplaced a GPS tracker on the Camaro registered to MILES and conducted surveillance of MILES activities.

18. On December 18, 2018, HCSO Agent C. Parker contacted SA White and informed him that the Camaro had departed the residence at 214 East Lyons St., Creedmoor, NC and traveled to Charlotte, NC. Upon arrival in Charlotte, the Camaro stopped at two gas stations for approximately ten minutes each. The Camaro then traveled to an apartment complex located at 9600 Perimeter Station Drive, Charlotte, NC. The Camaro remained at that location for approximately twenty minutes, departed and began traveling eastbound on I-85.

19. SA White then departed Cary, NC and traveled west bound to intercept the Camaro. Upon locating the Camaro, SA White began surveillance.

20. The Camaro stopped at the Tanger Factory Outlet Stores located at 4000 Arrowhead Boulevard, Mebane, NC. SA White observed the Camaro depart the Outlet Stores and travel eastbound on I-40/85. The Camaro exited the interstate after traveling eastbound for only 3 MILES. At the exit SA White was able to clearly see the driver and the passenger of the Camaro. SA White is familiar with MILES and his spouse, Jasmine Parker and was able to positively identify MILES as the driver and Parker as the passenger. MILES and Parker then reentered the interstate and traveled eastbound where they turned onto I-85. MILES exited the interstate and stopped at a gas station at exit 164. After a short while, MILES reentered I-85 and continued in the direction of Creedmoor, NC.

21. SA White contacted Dep. Spence and requested his assistance in conducting an investigative stop of MILES. Dep. Spence indicated that he was willing to assist. Dep. Spence then took the information that SA White provided and quiered MILES driver's license information and criminal history. Dep. Spence discovered that there was a notation for an active warrant for MILES arrest from Northampton County, NC. He also discovered that MILES had a lengthy criminal history

5

involving narcotics and firearms. Deputy Spence verified that the vehicle came back registered to the address of 214 East Lyon St Creedmoor, NC. Based on conversations with SA White, Dep. Spence believed that if stopped MILES might flee and or possess a firearm that he might try to use. Therefore Dep. Spence requested Dep. Campbell assistance with his K-9 and Dep. Womacks assistance as a backup officers.

22. Based on the address and MILES direction of travel Dep. Spence and Dep Womack sat at the 186 off ramp watching the Northbound traffic lanes. Dep. Campbell was positioned on Hwy 15 North out of sight. Shortly thereafter Dep. Spence was advised that MILES was crossing into Granville County and the Falls Lake Bridge. Dep. Spence saw a black in color Chevy Camaro with two occupants. As it passed they verified that MILES was the driver of the vehicle and there was a female passenger in the front passenger's seat. Dep. Spence also verified the NC registration plate on the vehicle positively identifying it as the vehicle they were looking for. Dep. Spence pulled on to the roadway and caught up to MILES who quickly exited off at exit 186. MILES turned right onto US Highway (Hwy) 15 North and before a traffic stop was initiated MILES turned into the parking lot of the Variety Mart Convenience store, less than a quarter mile from the exit. Before MILES could try to exit his vehicle, Dep. Spence initiated the investigatory stop. MILES pulled onto the lot and stopped.

23. Dep. Spence approached the passenger's side of the vehicle in order to use the car and the female as cover if in fact MILES intended on using a weapon. Dep. Spence identified himself and requested MILES driver's license and the registration to the vehicle. While waiting for the documents it was immediately apparent that the overwhelming odor of marijuana was coming from inside the vehicle. MILES provided his registration and his license. Both addresses were different, so Dep. Spence asked him where he was currently living. MILES stated that he had been living at the address in Creedmoor but hadn't had time to change his license. MILES started asking

questions why he was being stopped and Dep. Spence didn't feel it prudent to inform him that he had a warrant while he was still sitting the vehicle, so MILES was asked to step from the vehicle to verify his documents and current address. MILES stepped from the vehicle and sat in Dep. Spence's front passenger's seat. Shortly thereafter Dep. Womack pulled in behind Dep. Spence's vehicle and spoke to MILES at the front passenger's door. While Dep. Spence spoke to MILES, Dep. Womack walked to MILES vehicle and spoke to the front passenger who was later identified as Jasmine Jacquel Parker by her NC driver's license.

24. MILES told Dep. Spence that he and Parker were returning from doing some Christmas shopping and were headed to their residence on Lyon St. Dep. Womack then positioned himself at the front driver's door of Dep. Spences vehicle so that MILES wouldn't be able to exit the vehicle. Dep. Spence went back to the vehicle and spoke to Parker and informed her that MILES had an outstanding warrant. Dep. Spence then asked her to step from the vehicle. After Parker was out of the vehicle Dep. Spence turned to MILES and asked him when he last smoked marijuana in the vehicle. MILES stated that they had smoked on the way back from their shopping trip. Based on what Dep. Spence had obtained from SA White he believed that there was a larger quantity of narcotics still located in the vehicle. Dep. Womack was asked to detain MILES based on the outstanding warrant and did so.

25. Dep. Spence then requested that Dep. Campbell come to the scene to conduct a K-9 scan of the vehicle. Shortly thereafter Dep. Campbell arrived on scene. Dep. Spence informed Dep. Campbell that he had already detected the odor of marijuana coming from the vehicle but asked Dep. Campbell if he wanted to still conduct a scan of the vehicle. Dep. Campbell stated that he would like to do the scan. Dep. Campbell initiated the scan of the exterior and received a positive K-9 alert to the presence of narcotics in the vehicle. This K-9 alert was captured on Dep. Spence's in

7

car camera system. Dep. Spence informed MILES that in addition to the odor of marijuana coming from inside the vehicle that the K-9 had alerted to the presence of narcotics in the vehicle.

26. Dep. Spence and Dep. Womack initiated a hand search of Mile's vehicle. Parker was allowed to stand next to Dep. Spence's vehicle during the search and Dep. Campbell stood next to the front passenger's door of Dep. Spence's vehicle.

27. During the search, Dep. Spence located an E-Vape in the driver's door which contained liquid THC. There was at least one air freshener hanging from the rear-view mirror. Dep. Spence then turned his attention to the rear seat area where he saw a brown paper bag wedged between the driver's seat and the second-row seat. Dep. Spence had to reposition the seat to get the bag out. Once it was removed Dep. Spence could see a cardboard shoe box inside the larger brown bag. Dep. Spence removed the shoe box and opened it. The only thing inside the shoe box was a white plastic bag. Dep. Spence removed the plastic bag from the box and could feel what he knew to be a large quantity of pills. Dep. Spence opened the bag and saw what he believed to be approximately 10,000 small blue pills contained inside an additional gallon Ziploc bag. Dep. Spence then turned to Dep. Womack and told him that he was also detaining Parker. Parker was subsequently handcuffed and both Parker and MILES were read their Miranda Warnings. Both stated that they understood. MILES immediately stated that he wasn't answering any questions, and none were asked to him.

28. Parker was placed in Dep. Womack's patrol vehicle in order to keep them from talking to each other. Dep. Spence then placed the shoe box and bag of pills on the hood of his patrol vehicle so the pills could be captured by his in-car camera. While looking at the pills Dep. Womack stated that he believed the pills to be Fentanyl. While Dep. Womack continued the search of the vehicle Dep. Spence contacted SA White and informed him of his findings. Dep. Spence requested that SA White come to the scene to assist with the stop.

8

29. While completing the search of the vehicle Dep. Womack located two cell phones strategically hidden underneath the tire cover in the trunk of the vehicle. Dep. Spence located an additional cell phone in the back floorboard where the narcotics had been found along with a pine tree air-freshener. Dep. Spence found an additional cell phone inside the center console of the vehicle. Dep. Spence found an additional cell phone wedged between the center console and the front passengers seat. A spray bottle of "BLUNT" spray, a masking deodorant, was found in the driver's floorboard where Mile's feet would have been. Marijuana residue was found throughout the front passenger's area of the vehicle.

30. SA White arrived at the scene and MILES called out to him from the front seat of Dep. Spence's patrol car. A GCSO Deputy informed SA White that he (MILES) had already decline to speak with them. MILES continued to call out to SA White. SA White requested that the Deputy activate his body mounted video camera to memorialize his conversation with MILES. SA White then walked over to MILES and introduced himself. He (SA White) asked MILES if he wished to speak with him, even though he had told the GCSO that he did not want to talk. MILES indicated that he wished to speak with SA White. MILES added that he wanted it known that the drugs in the car were solely his (MILES) responsibility and that his spouse (Parker) had nothing to do with it. SA White told MILES that he would be happy to speak with him and that they would all go the GCSO substation in Butner, NC and talk.

31. Upon arrival at the GCSO substation SA White was joined by SA Staton. SA White, SA Staton and MILES sat down in the training room of the substation. SA White activated a digital audio recorder and the entirety of the interview was recorded on that device. SA White asked MILES if he had been advised of his Miranda rights by the GCSO on the roadside and explained that this interview was being conducted at his (MILES) request and been initiated by him (MILES) and he agreed. SA

White then verbally advised MILES of his Miranda rights and after being advised MILES stated that he wished to speak with SA White and SA Staton.

32. MILES stated that he had traveled that same day to an apartment located in Charlotte, NC and purchased approximately 10,000 fentanyl pills for $50,000. He claimed that he purchased them in the parking lot of the apartment complex from an individual that he refers to as "TJ'S Boy." MILES added that he had previously contacted "TJ's Boy" the previous Friday and Sunday to arrange the meeting.

33. MILES repeatedly stated that the fentanyl pills were his and that his spouse had no knowledge of them.

34. On December 19, 2018 Dep. Spence weighed the bag of blue pills and discovered that the gross weight of the bag and pills was approximately 2.24 pounds.

35. Based upon my experience and training, I believe probable cause exists that Deandre Lamont MILES, was found on December 18, 2018, in Granville County, North Carolina, within the Eastern District of North Carolina is in violation of Title 21, United States Code, Section 841 (a) (1), and a warrant of arrest should be issued.

Further affiant sayeth naught.

_____
JEFFREY R. WHITE
Special Agent,
Homeland Security Investigations

On this 20th day of December 2018, SA White appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

_____
United States Magistrate Judge
Eastern District of North Carolina